___ FILED     ___ ENTERED
___ LOGGED    ___ RECEIVED

4:42 pm, Feb 05 2024
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ____R.C.____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW R. HEBERT,<br><br>Defendant. | Case No. 1:24-mj-00291-CDA |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, David A. Rodski, being duly sworn, declare and state as follows:

### PURPOSE OF THE AFFIDAVIT

1. I submit this affidavit in support of a criminal complaint against Matthew HEBERT (HEBERT) for ) for (1) knowingly and willfully operating and attempting to operate an unregistered unmanned aircraft system ("UAS") [drone], in violation of 49 U.S.C. § 46306(b)(6)(A); (2) knowingly and willfully serving and attempting to serve as an airman, as that term is defined in 49 U.S.C. § 40102(a)(8)(A), without an airman's certificate, in violation of 49 U.S.C. § 46306(b)(7); and (3) knowingly or willfully violating United States National Defense Airspace, in violation of 49 U.S.C. § 46307.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

1:24-mj-00291-CDA

## BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI") and have been so employed for twenty-two (22) years. I have been assigned investigation of various crimes and federal offenses including crimes within the airport and aviation environment. Currently, I am assigned as an Airport Liaison Agent at the Thurgood Marshall – Baltimore Washington International Airport ("BWI") investigating crimes in aviation. I have been the affiant on numerous affidavits including violent crimes, terrorism, and other aviation-related offenses. I have collected evidence, testified at trial, and investigated complex transnational organizations. I have conducted training on crimes aboard aircraft for the aviation industry in the U.S. and around the world. I am familiar with federal law as it pertains to incidents involving aircraft, in-flight incidents, and in the airspace over the United States.

## STATUTES AND REGULATIONS

4. Title 14 (Aeronautics and Space"), Code of Federal Regulations, Section 1.1 defines the following terms used in this affidavit:

    a. "Aircraft" means a device that is used or intended to be used for flight in the air.

    b. "Unmanned aircraft" means an aircraft operated without the possibility of direct human intervention from within or on the aircraft.

    c. "Small unmanned aircraft" means an unmanned aircraft weighing less than 55 pounds on takeoff, including everything that is on board or otherwise attached to the aircraft.

d. "Small unmanned aircraft systems" (Small UAS) mans a small unmanned aircraft and its associated elements (including communication links, and the components that control the small unmanned aircraft) that are required for the safe and efficient operation of the small unmanned aircraft in the national airspace system.

e. "Model aircraft" means an unmanned aircraft that is (1) capable of sustained flight in the atmosphere; (2) flown within visual line of sight of the person operating the aircraft; and (3) flown for hobby or recreational purposes.

5. 49 U.S.C. § 40103(b)(3), requires the Administrator of the FAA, in consultation with the Secretary of Defense, to establish in the airspaces the Administrator decides are necessary in the interest of national defense; and by regulation or order, restrict or prohibit flight of civil aircraft that the Administrator cannot identify, locate, and control with available facilities in those areas. A temporary flight restriction (TFR) is a regulation that temporarily restricts certain aircraft from operating within a defined area in order to protect persons or property in the air or on the ground. Pursuant to Title 49 U.S.C. § 40103(b)(3), the FAA issued a TFR that prohibits all aircraft—including small unmanned aircraft—from operating within a three (3) nautical mile radius of any stadium. Qualifying locations and events are defined as any stadium or other sporting venue having a seating capacity of 30,000 or more where (a) a regular or post-season Major-League Baseball, National Football League, or NCAA Division One Game is occurring; or (b) a NASCAR CUP, Indy Car, or Champ Series Race is occurring excluding qualifying and pre-race events. This flight prohibition, is in effect one hour before the scheduled start until one hour after the end of a qualifying event.

6. 49 U.S.C. § 46306 (b)(5) and (b)(6) criminalize the knowing and willful operation of an unregistered UAS, when that UAS is required to be registered with the FAA.

7. 49 U.S.C. § 46306 (b)(7) criminalizes the knowing and willful operation of a UAS without an airman's certificate that authorizes the individual to serve in that capacity, when possessing such an airman certificate is required.

8. 49 U.S.C. § 46307 prohibits a person from knowingly or willfully violating 49 U.S.C. § 40103(b)(3), or a regulation prescribed thereunder or an order issued under § 40103(b)(3).

9. By way of background, there are two ways to lawfully operate a UAS within the National Airspace: a) by obtaining a Part 107 Remote Pilot Certificate and registering the UAS with the FAA; or b) flying under the Exception for Recreational Flyers. A UAS weighing less than 250 grams does not currently have to be registered with the FAA unless it is operated under part 107 or for commercial purposes. The Exception for Recreational Flyers detailed in 49 U.S.C. §44809 ("the Exception") contains the following requirements, all of which must be met:

    a. The aircraft is flown strictly for recreational purposes. *See,* https://www.faa.gov/faq/do-i-need-register-my-drone-and-if-so-how-do-i-register 5 5.

    b. The aircraft is operated in accordance with or within the programming of a community-based organization's set of safety guidelines that are developed in coordination with the Federal Aviation Administration.

    c. The aircraft is flown within the visual line of sight of the person operating the aircraft or a visual observer co-located and in direct communication with the operator.

    d. The aircraft is operated in a manner that does not interfere with and gives way to any manned aircraft.

    e. In Class B, Class C, or Class D airspace or within the lateral boundaries of the surface area of Class E airspace designated for an airport, the operator obtains prior

1:24-mj-00291-CDA

authorization from the Administrator or designee before operating and complies with all airspace restrictions and prohibitions.

  f. In Class G airspace, the aircraft is flown from the surface to not more than 400 feet above ground level and complies with all airspace restrictions and prohibitions.

  g. The operator has passed an aeronautical knowledge and safety test described in subsection (g) and maintains proof of test passage to be made available to the Administrator or law enforcement upon request.

  h. The aircraft is registered and marked in accordance with chapter 441 of this title and proof of registration is made available to the Administrator or a designee of the Administrator or law enforcement upon request.

  10. A UAS operator who at any time fails to meet one or more of the aforementioned requirements for operations under the Exception is immediately no longer eligible for the Exception; including and especially the recreational exception. At that point, the operator is subject to the requirements of Part 107, which requires, among other things, possession of a valid FAA Remote Pilot Certificate. UAS operations under Part 107 by UAS operators who do not possess an FAA Remote Pilot Certificate are unlawful pursuant to 49 U.S.C. § 46306 (b)(7) A UAS operated under part 107 must also be registered regardless of weight, and the operator must carry proof of registration while operating the UAS to be presented to law enforcement on request. Further, UAS operators who fail to meet any of the limited statutory exceptions in 49 U.S.C. §44809 while operating a UAS are doing so unlawfully unless they possess an FAA Remote Pilot Certificate permitting them to operate under Part 107. One of the requirements an operator must meet to be eligible for the Exception is that "[i]n Class B, Class C, or Class D airspace or within the lateral boundaries of the surface area of Class E airspace designated for an

airport, the operator obtains prior authorization from the Administrator or designee before operating and complies with all airspace restrictions and prohibitions." Therefore, any operations of UAS within Class B airspace without obtaining authorization from the FAA would result in the UAS operator no longer being eligible for the Exception, and thus subject to Part 107.

## STATEMENT OF PROBABLE CAUSE

11. On January 28, 2024, the aforementioned TFR was in effect for the National Football League (NFL) AFC Championship game at M&T Bank Stadium located in Baltimore MD. This TFR prohibited and precluded the flight of any UAS including, but not limited to, flying a UAS under the Exception for Recreational Flyers.

12. During the game on January 28, 2024, your affiant was notified by FBI Agents at the on-site command post at M&T Bank Stadium of an incursion by an unidentified and unapproved drone incursion which resulted in a threat deemed serious enough by NFL Security to temporarily suspend the game. Maryland State Police Troopers tracked the movement of the drone directly over the stadium, and then deployed to the area where the drone landed at or near 533 S. Sharp Street Baltimore MD. Other FBI agents traveled to that location and assisted Maryland State Police Troopers.

13. MSP Troopers and FBI agents interviewed the person suspected of operating the UAS that overflew M&T Bank stadium. He was identified by his Pennsylvania driver's license as Matthew Robert HEBERT, date of birth XX/XX/1979, Social Security Number XXX-XX-8054, Chadds Ford, PA 19317. HEBERT admitted to operating the UAS. He told the interviewing officers/agents the following:

  a. That HEBERT had purchased a DJI Mini 2 UAS in about 2021 from an online retailer, possibly Amazon. HEBERT registered for a DJI account and operated his UAS with the DJI application.

  b. HEBERT did not have any training on how to operate a UAS.

  c. HEBERT did not have a license to operate a UAS.

  d. HEBERT was unaware of the Federal Aviation Administration (FAA) application, "B4UFLY" [Know Before You Fly] until MSP Trooper Corporal Lantz provided him information on the application and the federal requirements for operating a UAS.

  e. HEBERT had no previous law enforcement contact regarding UAS operations in the past.

  f. HEBERT was unaware of any public notifications regarding UAS operating restrictions around the Stadium during the football game.

  g. HEBERT was aware that there was an ongoing football game at the Stadium. (Affiant Note: HEBERT was wearing a Baltimore Ravens jersey during the interview.) HEBERT lives in Pennsylvania and visited the residence of friends in Baltimore for the football game.

  h. At approximately 3:15 pm, on January 28, 2024, HEBERT stepped outside 533 S. Sharp Street and used his phone to access the DJI mobile application which allowed him to operate his UAS. HEBERT believed he was approximately one mile from the Stadium. HEBERT was surprised the DJI application allowed him to operate the UAS, because in past occasions the DJI application prevented him from operating the UAS due to flight restrictions. HEBERT relied exclusively on the DJI application to tell him if he was not allowed to fly the UAS. HEBERT assumed he was allowed to fly his UAS since the DJI application did

not prevent him from doing so. HEBERT flew the drone approximately 100 meters or higher for approximately two minutes. While in flight, HEBERT captured approximately six photos of himself and the Stadium. HEBERT may have taken a video as well. HEBERT was the sole operator of the UAS. HEBERT landed his UAS outside of 533 S. Sharp Street. HEBERT was unaware that his UAS flight had disrupted the football game until he was approached by MSP Trooper Corporal Lantz.

14. Although HEBERT was operating his UAS, which weighed less than 250 grams, in a recreational manner, he nonetheless was required to register it and possess an Remote Pilot certificate pursuant to Part 107 to operate it as he did on January 28, 2024. Your affiant has verified that HEBERT was nonetheless required to register the UAS and possess a Remote Pilot Certificate pursuant to part 107. First, your Affiant has probable cause to believe that HEBERT did not maintain line-of-sight operation of the UAS given the distance and obstructions between his location and the stadium, this is further supported by the flight path of HEBERT's drone provided to your affiant by NFL Security. Second, the stadium was not only within a TFR but also within the class B airspace of BWI Airport and HEBERT had not obtain authorization to fly in the class B airspace. Third, HEBERT did not posses the aeronautical knowledge and safety test described above. This combined in the requirement for HEBERT to possess an FAA Remote Pilot Certificate under Part 107. By his own admission as confirmed by a check of FAA records, HEBERT, did not possess the required certificate. Moreover, the FAA reported that the UAS had not been registered. Finally, HEBERT operated his UAS in violation of the TFR over the stadium.

15. Your affiant knows from training and experience, the potential dangers of a drone operated in violation of federal laws and regulations respecting the safe use and flight of such

drones. Specifically, the reckless operation of a UAS in the vicinity of a large crowd can be dangerous to the public, as well as interfere with other law enforcement and security operations. On January 28, 2024, although there were exceptions for flying a UAS under the Exception for Recreational Flyers, HEBERT did not meet these exceptions, and the TFR precludes any flight of any unapproved UAS.

## CONCLUSION

16. For the above-stated reasons, there is probable cause to believe that Matthew HEBERT violated: a) 49 U.S.C. § 46306 (b)(5) and (b)(6), by willfully operating an unregistered UAS, when that UAS was required to be registered with the FAA; b) 49 U.S.C. § 46306 (b)(7), by knowingly and willfully operating a UAS without an airman's certificate that authorizes the individual to serve in that capacity, when possessing such an airman certificate was required; and c) 49 U.S.C. § 46307, by knowingly or willfully violating U.S. Airspace.

*David A. Rodski*
David A. Rodski, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me by telephone, in accordance with Fed. R. Crim. P. 4.1, this 5th day of February 2024.

Honorable Charles D. Austin
United States Magistrate Judge

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

| | | |
|---|---|---|
| By: | X Complaint ___ Information ___ Indictment | Name of District Court, (City) Baltimore, Maryland Northern Division |

**Offense Charged**

Registration Violation Involving Aircraft; Certification Violations Involving Airman; Violation of United States National Defense Airspace

___ Petty
___ Misdemeanor
X Felony

**Defendant - U.S. vs.**
▸ Matthew Robert HEBERT

Address: 901 Homestead Lane, Chadds Ford, PA 19317

Birth date:* 10/11/79   Male/Female M   Alien (Y/N): N

* (Optional unless a juvenile)

**Place of offense:** Baltimore County

**U.S.C. Citation:** 49 U.S.C. §§ 46306(b)(6)(A); 46306(b)(7); and 46307.

____ FILED   ____ ENTERED
____ LOGGED  ____ RECEIVED

4:43 pm, Feb 05 2024

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY __R.C.__ Deputy

## Proceeding

**Name of Complainant Agency, Agent & Phone#**
FBI SA David Rodski, 443-865-8058

☐ Person is awaiting trial in another Federal or State Court, give name of court:

☐ This person/proceeding is transferred from another district per:
☐ FRCrP 20   ☐ 21   ☐ 40   Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
Show Docket #
☐ U.S. Attorney   ☐ Defense

☒ this prosecution relates to a pending case involving this same defendant

☐ prior proceeding or appearances before U.S. Magistrate Judge regarding this defendant were recorded under
Magistrate #

**Name & Office of Person furnishing information on this form**
Erek L. Barron
United States Attorney

**Name of Asst. U.S. Att'y** P. Michael Cunningham /pmc/

**Phone Number:** 410-209-4884

**Additional Information or comments:**

**Maximum Penalty:** Cts 1 and 2: 3 yrs; $250K fine, 1 yr SR; Ct 3: 1 yr, $100K fine, 1 yr SR

**Date of offense:** Jan 28, 2024

**Length of Trial:** 2 days

**HIDTA CASE:** ___ Yes   X No

## Defendant

**IS NOT IN CUSTODY**
1) X Has not been arrested, pending outcome of this proceeding. If not detained give date any prior summons was served on above charges. ▸ _____
2) ___ Is a fugitive
3) ___ Is on bail or release from (show District) _____

**IS IN CUSTODY**
4) ___ On this charge
5) ___ On another conviction   ___ Federal   ___ State
6) ___ Awaiting trial on other charges

If the answer to (6) is "Yes", show name of institution _____

Has detainer been filed? Y/N ___   Date filed _____
Date of Federal arrest ▸ _____   OR
Date Transferred to Federal Custody ▸ _____

☐ Check if plea is expected
☐ This report amends AO 257 previously submitted

**FOR USE OF THE CLERK'S OFFICE**

1:24-mj-00291-CDA

**OCDETF CASE:** ___ Yes   X No